# United States Court of Appeals
# for the Fifth Circuit

―――――――――

No. 22-50837

―――――――――

United States Court of Appeals
Fifth Circuit

**FILED**

February 21, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Bobby Quinton Gentile,

*Defendant—Appellant*.

――――――――――――――――――――――――

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:21-CR-49-5

――――――――――――――――――――――――

Before Higginbotham, Smith, and Higginson, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

Defendant Bobby Quinton Gentile pled guilty to conspiracy to possess with intent to distribute at least 500 grams of methamphetamine. Appealing his sentence, Gentile argues the district court judge improperly coerced him into withdrawing his objections to the Presentence Investigation Report's drug amount calculation by threatening to deny him his acceptance of responsibility points. We find no plain error and AFFIRM.

No. 22-50837

## I.

## A.

In April 2021, a grand jury indicted Bobby Quinton Gentile for conspiring to possess with intent to distribute at least 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 846. Gentile pled guilty to the indictment before a magistrate judge on September 7, 2021. During the colloquy, the Government read a summary of the factual basis into the record, including statements that Gentile and Ethan Tinney (Gentile's supplier and a major dealer) discussed combining their money to purchase at least 1.5 kilograms of methamphetamine, that Gentile had purchased methamphetamine from Tinney several times, and that Gentile's "relevant conduct" was over 3.5 kilograms of methamphetamine.[1]

Gentile admitted to the factual basis and said he "plead[s] to conspiracy." However, Gentile's attorney said Gentile took issue with "the amount that's attributed to him" beyond 500 grams. As the magistrate judge summarized, Gentile "agrees that he distributed at least 500 grams of methamphetamine, but . . . reserves the right to object to that at the time of sentencing" insofar as the amount exceeds 500 grams. Gentile agreed, the Government did not object, and the district court accepted the plea.

## B.

Gentile's Presentence Investigation Report recommended a base offense level of 36, a 2-level enhancement for firearms possession, a 2-level enhancement for the importation of methamphetamine, and a 3-level reduction for acceptance of responsibility, for a total offense level of 37. The

_____

[1] Under the Sentencing Guidelines, "relevant conduct" refers to "the range of conduct that is relevant to determining the applicable offense level." U.S.S.G. § 1B1.3 cmt. backg'd.

2

No. 22-50837

base offense level of 36 was supported by findings that Gentile was responsible for trafficking 3.5 kilograms of methamphetamine (3.01 kilograms of actual methamphetamine) and involved in at least five drug transactions.[2] Gentile also had 15 criminal history points, resulting in a criminal history category of VI and a guideline range of 360 months to life.

In preparing the PSR, the probation officer met with Gentile and his attorney. During the meeting, Gentile accepted responsibility and admitted that "he conspired to obtain a substantial amount of methamphetamine to make some money" over the course of "approximately four to five months." Based on these statements, the probation officer found Gentile eligible for an acceptance of responsibility reduction.

But then Gentile changed his tune: He filed several written objections to the PSR arguing that many facts were "untrue" and that law enforcement had only seized 7.0, rather than 37.0, grams of methamphetamine. Then at sentencing, Gentile argued that he was responsible for only 7 grams of methamphetamine in total, as opposed to both the 500 grams to which he pled guilty at his plea colloquy and the 3.5 kilograms contained in his accepted factual basis. In response, the probation officer noted the district court "may wish to consider allowing [Gentile] to withdraw his guilty plea and proceed to trial since he is denying the elements of the offense" and, in the alternative, suggested Gentile would be ineligible for the acceptance of responsibility reduction.[3]

---

[2] Details about these transactions were drawn from the factual basis presented by the Government at Gentile's plea hearing and "reports obtained from law enforcement officials."

[3] Three months after the PSR was issued, Gentile moved to withdraw his guilty plea, asserting he was "not guilty." The Government opposed the motion, and a hearing was held in June 2022. Ultimately, Gentile withdrew his motion.

## C.

Gentile's sentencing hearing was held on September 14, 2022. Gentile said he read the PSR with his attorney, who then objected to the relevant conduct portion of the report and told the judge that the probation office "denied all of [Gentile's] objections and asked to take away the points that were attributed to Mr. Gentile agreeing to plea." His attorney further explained that, while they "understand how the conspiracy laws apply," they believe "the government may be overreaching a little bit and including everything on top of Mr. Gentile's sentence." At bottom, the attorney said, "we do admit guilt to being part of the conspiracy with the transaction that was committed, but the amount which my client should be responsible for is seven grams and not three kilos."

In response, the district judge initially said he would not remove the acceptance of responsibility points. However, the Government then argued Gentile pled to a charge including "at least 500 grams of methamphetamine" but is now "only admitting to seven, eight grams of methamphetamine" and "denying every single other bit of conduct that he's responsible for." The Government said that "if [Gentile] continues to deny each and every one of the transactions . . . then we are going to ask for his acceptance of responsibility to be re [sic] removed."[4] Gentile's attorney contended that Gentile was "not denying everything" but only "the part that he participated

---

[4] Pursuant to U.S.S.G. § 3E1.1, the Government influences one point of the acceptance reduction. *See* U.S.S.G. §§ 3E1.1(b); 3E1.1(b) cmt. 6 ("Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing.").

No. 22-50837

in."[5] After this back-and-forth, the following exchange occurred between the court and Gentile's attorney:

> THE COURT: Well, if—I think what I hear you both saying is that you are—through your objections you are going to require the government to put on evidence that he actually was involved with many of these transactions or, you know, that he is actually—that he actually was guilty of the total amount of meth that the government is charging him with and he is only currently admitting participation in a much lesser amount.
>
> MR. VASQUEZ: Yes, Your Honor.
>
> THE COURT: If you do that, *then I'm going to grant the objection to his acceptance of responsibility because he's not accepting responsibility.*
>
> MR. VASQUEZ: He's accepting responsibility.
>
> THE COURT: No. Look. You can go back and forth and you can say—
>
> MR. VASQUEZ: Yes, Your Honor.
>
> THE COURT: *He's either going to accept responsibility for the entire amount, in which case he gets the three points, or you can force the government to do what I think you're going to force them to do, and that's fine.* That's your right. I would—I will put on the record it's—it is—I've only been on the bench four years, but it has been my experience that every time someone does what you're about to do, which is, requires the government to more fully disclose to me just how involved your person was in their—and how engaged they were in the crime, it always enures to their detriment. The more I know specifically about how guilty your person is has never helped anyone who's come

---

[5] Gentile's attorney further said that this issue was "why we considered withdrawing the plea," but ultimately they "announced the morning of our hearing" that they would not withdraw the plea considering they had "the ability to object to those points of the presentence report that stacked additional drugs on to [Gentile]."

No. 22-50837

before your defendant. But you obviously have a constitutional right to do whatever you want to under the Sixth Amendment to protect this gentleman. *But if you are going to force the government to prove his involvement in what I'm going to call the entire charge that he's pleading guilty to, then he's not accepting responsibility for it.*

MR. VASQUEZ: Yes, Your Honor. I understand.

THE COURT: So if he's willing to move forward—*if he wants to move forward and have you force the government to put the witness on and prove this, he does it at the risk of losing the three points.*

After conferring with his attorney, Gentile withdrew his objection and did not require the Government to proffer proof of the drug amount. The district court then adopted the PSR's sentencing recommendations, including its guideline range of 360 months to life based on a total offense level of 37 and a criminal history category of VI, which included Gentile's acceptance point reductions. Gentile did not object to any of the court's statements about the points or challenge the reasonableness of his sentence.

The district court imposed a 360-month sentence, a 5-year term of supervised release with mandatory and special conditions, a $500 fine, and a $100 special assessment. Gentile timely appealed and now argues he was judicially coerced into withdrawing his objections to the PSR's drug amount calculation.[6]

---

[6] Gentile's appointed appellate counsel filed a motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967), but this Court denied the motion and ordered briefing on the merits regarding whether Gentile was coerced.

No. 22-50837

## II.

This Court reviews unpreserved objections regarding judicial coercion for plain error.[7] "To prevail on plain error review, a defendant must show (1) an error that has not been affirmatively waived, (2) that is clear or obvious, and (3) that affected his substantial rights."[8] If all three factors are met, the Court has discretion to correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings."[9]

## III.

Generally, a defendant arguing that a plain error occurred at sentencing must, at a *bare minimum*, show that the error could have in some way affected his sentence.[10] While this Court has not yet decided exactly what a defendant alleging judicial coercion in this context must show to prove an effect on his substantial rights,[11] we need not reach the question here, for Gentile has failed to allege *any* remotely plausible effect on his sentence.

_____

[7] *United States v. Angeles*, 971 F.3d 535, 537 (5th Cir. 2020).

[8] *United States v. Lindsey*, 969 F.3d 136, 139 (5th Cir. 2020) (citing *Puckett v. United States*, 556 U.S. 129, 135 (2009) and *Davis v. United States*, 140 S. Ct. 1060, 1061–62 (2020) (per curiam)). Gentile argues, without explanation, that this coercion was a "structural error." Regardless, plain error review applies, as this alleged error was unpreserved.

[9] *Lindsey*, 969 F.3d at 139 (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018)).

[10] To be clear, we do not hold that this showing is sufficient to obtain relief. *See Puckett*, 556 U.S. at 142, 142 n.4 ("When the rights acquired by the defendant relate to sentencing, the outcome he must show to have been affected is his sentence.") (internal quotations omitted) (cleaned up); *United States v. Castillo-Rubio*, 34 F.4th 404, 411 (5th Cir. 2022) (noting, when assessing whether there was plain error when the district court failed to adequately explain the sentence and consider certain sentencing factors, that a defendant must demonstrate "the district court would have imposed a lower sentence" but for the error).

[11] Cases in this Circuit addressing whether a district court coerced a defendant into withdrawing objections by threatening to remove acceptance of responsibility points have

No. 22-50837

Gentile's argument that he was judicially coerced to withdraw his objections to the PSR fails under plain error review because, even assuming arguendo that the district court erred clearly by coercing him, Gentile does not show the error affected his substantial rights. Gentile's sole argument about the negative impact of the alleged coercion is that, had he "received his three points, the offense level would have been 34, and with a criminal history category of VI his Guidelines range would have been 262–327 months, instead of 360 to life." But this contention is factually incorrect. Gentile *did* receive all three of his acceptance points; his offense level of 37 accounted for them.[12] As a result, Gentile has failed to show any possible effect on his substantial rights. His sentence is AFFIRMED.

---

not articulated what a defendant must show to prove an effect on his substantial rights. *See, e.g., Angeles*, 971 F.3d at 537–39; *United States v. Schenck*, 697 F. App'x 422, 423 (5th Cir. 2017); *United States v. Sykes*, 559 F. App'x 331 (5th Cir. 2014) (unpublished) (per curiam) (mem. op.).

[12] Because Gentile failed to show an effect on his substantial rights, we do not reach the Government's alternative arguments that Gentile "attempted to minimize conduct and falsely deny his relevant conduct" and based his objections on "unreliable, unsworn assertions."

Attorneys have an enduring duty to analyze non-frivolous issues even when their *Anders* motions have been denied. Here, simply reading the sentencing hearing transcript should have informed Gentile's attorney that the relevant offense level was 37–40, rather than 34–37; thus, taking the opportunity to file a reply brief addressing the briefing error would have been proper.