# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-10604

United States Court of Appeals
Fifth Circuit

**FILED**
August 5, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DOMINIC LINDSEY,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before HIGGINBOTHAM, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:

This case was remanded by the United States Supreme Court. *See Lindsey v. United States*, No. 19-7685, 2020 WL 2621673 (U.S. May 26, 2020). In our previous opinion, we affirmed the judgment of the district court, relying on this circuit's rule that "[q]uestions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error." *United States v. Lindsey*, 774 F. App'x 261, 261 (5th Cir. 2019) (quoting *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991)). Because the Supreme Court

No. 18-10604

in *Davis v. United States*, 140 S. Ct. 1060 (2020), rejected that absolute rule, we again apply plain error review but with that corrective.  AFFIRMED.


FACTUAL AND PROCEDURAL BACKGROUND

Dominic Lindsey was arrested on July 18, 2017, and subsequently pled guilty to being a felon in possession of a firearm and to possession with intent to distribute a controlled substance.  He now challenges his sentence.  Because this case turns on the relationships between the conduct underlying Lindsey's offense of conviction and the conduct underlying certain state charges, we examine that conduct and those charges.

First, on November 2, 2016, Lindsey was arrested by a Lewisville, Texas, police officer after Lindsey was found asleep in the front passenger seat of a vehicle idling in a parking lot, with a 9mm pistol on the vehicle floor and a backpack containing five small bags of marijuana and $1330 cash.  Lindsey was charged in state court with possession of marijuana between two and four ounces and unlawful possession of a firearm by a felon.

Second, on April 6, 2017, Lindsey was arrested by a Mesquite, Texas, police officer after Lindsey was again found asleep in a vehicle idling in a parking lot, and with 139.7 grams of marijuana, two pills marked "Xanax," and $1565 cash.  When he awoke, he appeared intoxicated.  Lindsey was charged in state court based on that arrest with possession of marijuana between four ounces and five pounds, driving while intoxicated ("DWI"), and possession of a controlled substance.  After appellate briefing but before oral argument, Lindsey was sentenced in state court to six months on the marijuana charge and ninety days on the DWI charge.  The controlled substance charge was dismissed.

Third, on June 16, 2017, approximately two months later, Lindsey was arrested by an Irving, Texas, police officer after a traffic stop of a vehicle

2

No. 18-10604

Lindsey was driving.  A vehicle search revealed a small bag containing 27.3 grams of marijuana.  Lindsey was charged in state court after this arrest with possession of marijuana less than two ounces.  After briefing but before oral argument, this charge was dismissed.

Finally, on July 18, 2017, Lindsey was arrested by a Dallas, Texas, police officer after a traffic stop and search of his vehicle revealed a Glock Model 26 9mm pistol with an extended magazine, bags containing 233.3 grams of marijuana, and another small bag containing acetaminophen and hydrocodone.  There were three passengers in the vehicle with Lindsey, one woman and two minors.  This is the conduct underlying the offense here and the sentence under review.  For this conduct, Lindsey was charged with being a felon in possession of a firearm (Count I) and possessing with intent to distribute a controlled substance (Count II).  He pled guilty to these offenses.

Lindsey filed a motion requesting a downward variance and requesting that any sentence imposed for his federal charges run concurrently to any sentences imposed for the state charges arising from the same conduct. Lindsey did not address the prospect of not-yet-imposed state sentences for the earlier charges, but in support of his request for concurrent sentences, Lindsey cited to Section 5G1.3(b) and (c) of the United States Sentencing Guidelines.

The district court imposed a within-Guidelines sentence of 78 months for Count I and 60 months for Count II, with said terms to run concurrently. Lindsey's sentence was also to run concurrently to any state sentences imposed for charges related to Lindsey's July 18, 2017 conduct, but to run consecutively to any state sentences imposed for the charges related to Lindsey's earlier conduct described above, because those "charges [were] unrelated to the instant offense."

Lindsey objected to the procedural and substantive reasonableness of his sentence, but he did not object to his sentence's being consecutive to any future

3

No. 18-10604

state sentence imposed for the earlier state court charges. Lindsey filed a timely notice of appeal and challenges his sentence on this ground.

## DISCUSSION

Because Lindsey did not preserve this error in district court, we review his sentence for plain error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009); *Davis*, 140 S. Ct. at 1061–62. To prevail on plain error review, a defendant must show (1) an error that has not been affirmatively waived, (2) that is clear or obvious, and (3) that affected his substantial rights. *Id.* If a defendant satisfies these three conditions, we have the discretion to correct the error but should do so only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018).

*I.     Sentencing with undischarged or anticipated terms of imprisonment*

District courts have discretion to select whether sentences they impose will run concurrently or consecutively to other sentences they impose, to sentences that have been imposed in other proceedings, and to "anticipate[d]" state sentences not yet imposed. *See Setser v. United States*, 566 U.S. 231, 236–237 (2012). The Sentencing Guidelines address sentences for defendants who are subject to undischarged or anticipated state terms of imprisonment. *See* U.S.S.G. § 5G1.3. The district court did not expressly state the Guidelines provision under which it chose to impose the consecutive portion of Lindsey's sentence, and the parties disagree on which provision applies. For reference, we quote the relevant provisions of Section 5G1.3 here:

> (b) If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3

4

No. 18-10604

(Relevant Conduct), the sentence for the instant offense shall be imposed as follows:

> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

(c) If . . . a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.

(d) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(b)–(d).

Lindsey argues that the district court's order that Lindsey's sentence term run consecutive to any future state sentence imposed for the earlier state court charges was error because, according to Lindsey, the offenses underlying his state court charges (arising from the events of November 2, 2016; April 6, 2017; and June 16, 2017) were "relevant conduct" with regard to the offense of conviction here. Thus, Lindsey concludes, under Section 5G1.3(b) and (c), the Guidelines recommend that his sentence should run concurrently to any sentences arising from his earlier state court charges, and we should remand for resentencing.

The Government argues that subsection (b) is not applicable because it applies only when there is an "undischarged term of imprisonment,"

No. 18-10604

§ 5G1.3(b), which means a state term of imprisonment that already exists at the time of sentencing. We have recognized that Section 5G1.3(b) "permits a court to adjust a sentence if a defendant has served time on an undischarged term." *United States v. Hankton*, 875 F.3d 786, 792 (5th Cir. 2017). Subsection (b) also then recommends that a district court order the adjusted sentence for an instant offense "to run concurrently to the remainder of the undischarged term." § 5G1.3(b)(2). This does not apply to Lindsey; he had not begun serving time on another sentence at the time of sentencing. Subsection (b) is not applicable.

The Government next recognizes that Section 5G1.3(c), which concerns "anticipated" state sentences, might apply. It does not, though, because the Guidelines commentary explains that Subsection (d), and not earlier subsections, governs "[c]ases in which only part of the prior offense is relevant conduct to the instant offense." § 5G1.3 cmt. n.2(A). The Government acknowledges that neither subsection (c) nor the relevant commentary states that subsection (c) applies only when all, as opposed to merely part, of the prior offense or offenses is relevant conduct to the instant offense. Nonetheless, the Government interprets the manner in which the subsection (d) commentary is phrased to mean that provision is the only one applicable when merely part, as opposed to all, of the prior offense is relevant conduct to the instant offense.

Further, according to the Government, because subsection (d) allows for the district court to impose a sentence that runs concurrently, partially concurrently, or consecutively to the prior undischarged term, and because the district court correctly determined that Lindsey's anticipated sentences were, at the very least, not entirely relevant conduct to the offense of conviction, there was no error in ordering the federal sentence to run consecutively to anticipated state court sentences.

6

It is not clear which subsection of Section 5G1.3 the district court employed in imposing Lindsey's sentence. Regardless, the uncertainties we have described demonstrate that it was not plain error for the district court to order that Lindsey's federal sentence run consecutively to any future-imposed sentence that arose out of the pending state court charges related to the earlier offenses in question.

## II.    Section 5G1.3(c): "Anticipated" state term of imprisonment

According to Section 5G1.3(c), if a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the federal offense of conviction, the federal sentence shall run concurrently to the anticipated term of imprisonment. § 5G1.3(c). "Relevant conduct" for drug and gun offenses like those in Counts I and II here includes acts and omissions that were part of the "same course of conduct" or "common scheme or plan" as the offense of conviction. *United States v. Ortiz*, 613 F.3d 550, 557 (5th Cir. 2010); § 1B1.3(a)(2). These two concepts are closely related. § 1B1.3 cmt. n.5(B). We need not consider the common scheme concept, though, because Lindsey does not argue that his offenses fall into this category. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

For the concept of the same course of conduct, offenses must be "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." § 1B1.3, cmt. n.5(B)(ii); *see also Ortiz*, 613 F.3d at 558. To determine whether offenses so qualify, courts consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." § 1B1.3, cmt. n.5(B)(ii); *see also United States v. Nava*, 957 F.3d 581, 586–87 (5th Cir. 2020).

No. 18-10604

A.    *Degree of similarity*

In evaluating the degree of similarity, we "inquire whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a course of conduct rather than isolated, unrelated events that happen only to be similar in kind." *United States v. Rhine*, 583 F.3d 878, 888 (5th Cir. 2009) (quotation marks omitted).

Lindsey emphasizes the similarities between his state court charges and the offense of conviction. Specifically, (1) each offense involved his being discovered in his vehicle, (2) each offense involved possession of marijuana, and (3) the presence of a firearm during both his November 2, 2016 arrest and his July 18, 2017 offense of conviction.

The Government emphasizes that Lindsey had widely varying amounts of marijuana in every offense, and only sometimes was he in possession of a firearm. The Government also states that whether Lindsey was in possession of a controlled substance varied, and when he was, the substance was not the same each time (Xanax on April 6, 2017, but hydrocodone on July 18, 2017).

It is important that the analysis of similarity not be performed "at such a level of generality as to render it meaningless." *Rhine*, 583 F.3d at 888. Here, even though drugs, and specifically marijuana, were present during each offense, the marijuana-related charges were for widely different amounts. Further, while Lindsey was discovered alone and asleep in his vehicle on the occasions underlying the first two state charges, the offense of conviction was the result of a traffic stop with passengers in the vehicle. Although all of his offenses took place in the Dallas metropolitan area, none of them were in the same location. Finally, there was no evidence of other possible similarities, such as a common source, supplier, or destination of the drugs, and there was no evidence of any accomplices, much less common accomplices. These differences, as well as the absence of evidence of possible similarities, suggest

8

that the "similarity" factor does not weigh in Lindsey's favor. *See United States v. Wall*, 180 F.3d 641, 646 (5th Cir. 1999). Thus, to conclude that the offenses were unrelated was not clearly or obviously an error on the basis of potential similarities.

### B.    Regularity

When considering the regularity factor, we "inquire whether there is evidence of a regular, *i.e.*, repeated, pattern of similar unlawful conduct directly linking the purported relevant conduct and the offense of conviction." *Rhine*, 583 F.3d at 889–90.

Lindsey argues that his offenses, which occurred on November 2, 2016, approximately five months later on April 6, 2017,[1] and approximately three months later on July 18, 2017, were sufficiently regular for this factor to weigh in favor of finding relevant conduct. He relies on a case where we concluded that a district court had not clearly erred in finding that bimonthly offenses were "regular." *United States v. Ocana*, 204 F.3d 585, 591 (5th Cir. 2000).

The Government concedes that "regularity may be present," but it highlights that the offenses are still not "sufficiently connected or related . . . as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Rhine*, 583 F.3d at 890 (quoting § 1B1.3, cmt. n.5(B)(ii)).

This factor does not weigh for either party. There may have been a faint pattern connecting Lindsey's conduct; he possessed marijuana in his vehicle in every offense, and he had a firearm in the vehicle in one of the state offenses as well as the offense of conviction. His offenses occurred over the course of several months, but the time intervals varied, and as we recognized in our

---

[1] All charges resulting from Lindsey's June 16, 2017 conduct have been dropped, and therefore they do not affect our analysis.

similarity analysis, so did the details of the conduct, suggesting that while Lindsey may have regularly committed comparable crimes, the earlier offenses were not "directly link[ed]" to his offense of conviction.  In the end, any potential "regularity" of Lindsey's conduct is not enough to say that the district court's conclusion that the offenses were "unrelated" was clearly and obviously erroneous.

> C.     *Time interval between offenses*

Finally, Lindsey argues all the relevant conduct occurred within one year preceding the conduct underlying his federal offense, sufficient for the temporal proximity factor to weigh in his favor.  *See Ocana*, 204 F.3d at 590. The Government concedes that all the offenses occurred within a one-year period and that this court has "generally used a year as the benchmark for determining temporal proximity."  *Rhine*, 583 F.3d at 886–87.  It maintains that mere temporal proximity is not enough to show that that offenses were part of the "same course of conduct."

In the end, the offenses (1) were not sufficiently similar, (2) displayed at most a weak pattern of "regularity," and (3) did indeed take place within a one-year window, sometimes only a few months apart.  We conclude the offenses were not part of the "same course of conduct" such that the district court clearly and obviously erred in finding the offenses were unrelated.

District courts have discretion to select whether sentences they impose will run concurrently or consecutively to anticipated state sentences that have not yet been imposed.  *See Setser*, 566 U.S. at 236–237.  Here, the district court's conclusion that the earlier state "charges [were] unrelated to the instant offense," and thus its order that Lindsey's federal sentence run consecutively to any state sentences arising from the earlier charges, was not plain — *i.e.*, clear and obvious — error under Section 5G1.3(c).

10

III.    *Section 5G1.3(d): Any other case involving an undischarged term of imprisonment*

The Guidelines provide that "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."  § 5G1.3(d).  The commentary on the application of subsection (d) discuss "Complex Situations:"

> Occasionally, the court may be faced with a complex case in which a defendant may be subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules.  In such a case, the court may exercise its discretion in accordance with subsection (d) to fashion a sentence of appropriate length and structure it to run in any appropriate manner to achieve a reasonable punishment for the instant offense.

§ 5G1.3, cmt. n.4(D).

Lindsey does not argue that the consecutiveness of his federal sentence was plain error under § 5G1.3(d), so we could deem the argument abandoned. *Cinel*, 15 F.3d at 1345.  Even if Lindsey had raised an argument in this regard, the Guidelines instruct the district court to consider a number of factors, including the 18 U.S.C. § 3553(a) factors, in making this decision.  § 5G1.3, cmt. n.4(A).  Any argument that the district court should have weighed these factors differently would be an insufficient basis for reversal.  *See United States v. Heard*, 709 F.3d 413, 435 (5th Cir. 2013).

AFFIRMED.